# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### STATESBORO DIVISION

DE'ANDRE MOODY,

       Plaintiff,

  v.

WARDEN STANLEY WILLIAMS; DEPUTY
WARDEN JAMES DEAL; CPT. ANDREW
MCFARLANE; ERIC SMOKES; and LT.
JOHNNY DAVIS,

       Defendants.

CIVIL ACTION NO.: 6:14-cv-108

---

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at the Georgia Diagnostic Center in Jackson, Georgia, filed a cause of action contesting certain conditions of his confinement while he was housed at Smith State Prison in Glennville, Georgia. (Doc. 1.) Defendants Stanley Williams, James Deal, Andrew McFarlane, Eric Smokes, and Johnny Davis ("Defendants") filed a Motion to Dismiss. (Doc. 15.) Plaintiff filed a Response, (doc. 20), and Defendants filed a Reply. (Doc. 23.) Plaintiff filed several Surreplies. (Docs. 28, 29, 30.)[1] For the reasons which follow, Defendants' Motion should be **GRANTED**, and Plaintiff's Complaint should be **DISMISSED**, without prejudice. Additionally, Plaintiff should be **DENIED** leave to appeal *in forma pauperis*.

---

[1] Plaintiff filed a Notice of Amended Claim in Original Complaint, (doc. 29.) As this pleading does not actually amend Plaintiff's original Complaint, Defendants' Motion to Dismiss need not be dismissed as moot. Instead, this pleading provides further factual details of Plaintiff's allegations against Defendants. Plaintiff also filed a Motion to Explain his Late Response to Defendants' Motion to Dismiss. (Doc. 31.) As Plaintiff's responses to Defendants' Motion were not late, to the extent this pleading can be construed as a motion, Plaintiff's Motion is **DISMISSED** as moot.

# BACKGROUND[2]

Plaintiff claims he informed an officer and Defendant Smokes upon his arrival at Smith State Prison that his "affiliation" was wrong. (Doc. 1, p. 5.) Plaintiff contends he was placed in a single man cell in administrative segregation because of the violent assaults between rival gang members at the prison. Plaintiff states Defendant McFarlane instructed him to pack his things and move to a two man cell about a month after his arrival at the prison. Plaintiff asserts he was later given a cell mate who is a member of a rival gang, even though there was no one else in the cell with him initially. Plaintiff also asserts he informed all Defendants on a daily basis that they needed to move Plaintiff out of that cell because he and his cell mate were members of rival gangs.

By example, Plaintiff maintains Defendant McFarlane "assured" Plaintiff that things would be fine and told Plaintiff if he had any problems to notify the floor officer and "they will be handled." (Id. at p. 6.) Additionally, Plaintiff asserts he told Defendant Davis he and his cell mate were having problems since they were not of the same gang affiliation, and Defendant Davis told Plaintiff to give him a few days to have the two inmates separated. Further, Plaintiff asserts he informed Defendants Smokes, Deal, Williams, and Davis on August 28, 2013, of the severity of the problems between him and his roommate because he was trying to avoid an altercation. However, Plaintiff maintains, Defendants Smokes, Deal, Williams, and Davis left this area and forgot all about Plaintiff and his concern for his safety. (Id. at p. 8.) Plaintiff alleges he was not moved, and his cell mate stabbed him in the face, hands, left arm, and left leg while he was sleeping on August 31, 2013. (Id. at pp. 12, 14.) Plaintiff contends he sustained several injuries as a result of this stabbing.

---

[2] The recited allegations are taken from Plaintiff's Complaint and are viewed, as they must be at this stage, in the light most favorable to Plaintiff.

Plaintiff alleges that he was taken to the hospital for medical treatment and, upon his return to the prison, he was placed in a single man cell. Plaintiff asserts he noticed several single man cells which were empty where he could have been placed before he was stabbed. (Id. at p. 14.) Plaintiff also asserts he was once again placed in a two man cell about a week later and was placed in a cell with a member of a rival gang. Plaintiff contends he voiced his concerns about this arrangement, he was not moved, and his cell mate attacked him with a knife. Plaintiff asserts he was able to take the knife away from his cellmate before he was stabbed. (Id. at p. 16.)

After the requisite frivolity review, Plaintiff's Complaint was served upon Defendants on the basis of Plaintiff's allegations that they were deliberately indifferent to his safety, in violation of the Eighth Amendment. (Doc. 8.)

DISCUSSION

Defendants set forth several grounds for dismissal of Plaintiff's Complaint in their Motion. First, Defendants aver Plaintiff failed to exhaust his available administrative remedies prior to the filing of his Complaint. Defendants note Plaintiff fails to state a claim against them in their official capacities. Defendants also note Plaintiff fails to state a viable Eighth Amendment claim against them in their individual capacities. Finally, Defendants maintain they are entitled to qualified immunity. As set forth below, the undersigned agrees Plaintiff failed to exhaust his administrative remedies prior to the filing of his Complaint, and his Complaint is due to be dismissed on this ground.

## I. Standard of Review

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Even though a

failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id.

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). Section 1997e(a) of Title 42 of the United States Code states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523. The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 541 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit clarified how the lower courts are to examine the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id.

4

"Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). "However, 'while [Section] 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require more.'" Id. (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000)). Nevertheless, the purpose of Section 1997e(a) is not that "fact-intensive litigation" result over whether every fact relevant to the cause of action was included in the grievance. Hooks v. Rich, CV605-65, 2006 WL 565909, at *5 (S.D. Ga. Mar. 7, 2006) (internal citation omitted). "'As long as the basic purposes of exhaustion are fulfilled, there does not appear to be any reason to require a prisoner plaintiff to present fully developed legal and factual claims at the administrative level.'" Id. (quoting Irvin v. Zamora, 161 F. Supp.2d 1125, 1135 (S.D. Cal. 2001)). Rather, Section 1997e(a) is intended to force inmates to give state prison authorities a chance to correct constitutional violations in their prisons before resorting to federal suit and to prevent patently frivolous lawsuits. Id.

The Georgia Department of Corrections' grievance procedure is set forth in Standard Operating Procedure ("SOP") IIB05-0001. This SOP does not require an inmate to attempt to informally resolve his complaint before filing a formal grievance. (Doc. No. 15-3, p. 5.) An inmate can file, with a few exceptions, "a grievance about any condition, policy, procedure, or action or lack thereof that affects the [inmate] personally." (Id. at p. 6.) An inmate must submit a grievance form "no later than 10 <u>calendar</u> days from the date the [inmate] knew, or should have known, of the facts giving rise to the grievance." (Id. at p. 8) (emphasis in original.) The Grievance Coordinator is to screen the grievance to determine whether the warden should accept the grievance or reject it. The warden has a period of forty (40) calendar days from the date the inmate gave his grievance to the counselor to respond. An extension of ten (10) calendar days can be granted once, provided the inmate is advised in writing of the extension before the original 40 calendar days have expired. (Id. at p. 10.) An inmate can file an appeal with the Commissioner's Office in the following instances: if the grievance coordinator rejects his original grievance; after the warden responds to the original grievance; or when the time allowed for the warden's decision has expired. The inmate has seven (7) calendar days in which to file this appeal. (Id. at p. 12.) The Commissioner has 100 calendar days after receipt to render a decision. (Id.) These time limits may be waived for good cause. (Id.)

With these standards and procedures in mind, the Court now addresses Defendants' argument that Plaintiff did not exhaust his administrative remedies as to his claims against them.

## II.    Assessment of Plaintiff's Exhaustion

Defendants maintain Plaintiff filed four (4) grievances while he was housed at Smith State Prison, two (2) of which are not related to the issues set forth in his Complaint. (Doc. 15-1, p. 6.) Defendants note that Plaintiff's remaining two (2) grievances do concern his contentions

regarding the first stabbing, but he only mentions three (3) of the Defendants in these grievances—Defendants McFarlane, Smokes, and Davis—as ignoring his concerns for his safety. Defendants state Plaintiff fails to mention either Defendants Williams or Deal in these grievances, which gave no indication Plaintiff intended to hold Defendants Williams and Deal responsible for the alleged deliberate indifference. Defendants also state Plaintiff did not file an appeal on the denials of these two (2) grievances regarding the first stabbing, and thus, he failed to fully exhaust the grievance process. Defendants assert Plaintiff failed to file any grievance concerning the second stabbing on September 23, 2013. (Id. at p. 7.)

Plaintiff responds he "personally and verbily (sic) exhausted his delimma (sic)" to all of the Defendants on the day he arrived at Smith State Prison.[3] (Doc. 30, p. 1.) Plaintiff avers he informed Defendant McFarlane of his dilemma when he was moved from a one-man cell to a two-man cell in administrative segregation. Plaintiff states he "exhausted this problem" to Defendant Davis "when a rival gang member was place[d] in his cell[.]" (Id. at p. 2.) Plaintiff also states he exhausted his remedies with all Defendants while they were doing different inspections. Finally, Plaintiff notes he was forced to file a written grievance after he made numerous attempts to fix his dilemma "with verbal exhausting to all said [D]efendants." (Id.).

Despite Plaintiff's seeming admission that he failed to follow the dictates of SOP IIB05-0001 and therefore did not exhaust his administrative remedies prior to the filing of his Complaint, the Court nevertheless will review the documentary evidence Defendants submitted.

---

[3] Plaintiff filed an opposition to Defendants' Motion to Dismiss, (doc. 20), as well as an Amended Motion in Response to Defendants' Motion to Dismiss, (doc. 28), and Notice of Amended Claim, (doc. 29). However, Plaintiff does not respond to Defendants' assertion that he failed to exhaust his administrative remedies until he filed his second Amended Motion in Response to Defendants' Motion to Dismiss, (doc. 30).

### A.  Grievance Number 156365

In Grievance Number 156365, which is dated September 2, 2013, Plaintiff stated he was stabbed on August 31, 2013.  (Doc. 15-4, p. 4.)  Plaintiff asserted he told Defendant Davis that he and his roommate were having problems a week before the stabbing.  Plaintiff also asserted Defendant Davis called Defendant Smokes and told him about Plaintiff's complaint, yet Defendants Davis and Smokes did not move Plaintiff from the cell he shared.  Plaintiff stated he personally informed Defendant Smokes of this issue when he made his rounds that week.  (Id.) This grievance was denied on the merits.  (Id. at p. 5.)

While Plaintiff filed this grievance within the time designated under SOP II05-0001 as to the first stabbing incident, he did not properly exhaust his administrative remedies by the filing of Grievance Number 156365.  Plaintiff only names Defendants Davis and Smokes in this grievance, and there is nothing in this grievance which would have placed the remaining Defendants on notice Plaintiff intended to complain about them and their actions or inaction. Further, Plaintiff failed to file an appeal of the denial of this grievance.  Plaintiff did not exhaust his administrative remedies as to his claim that Defendants were deliberately indifferent to his safety prior to the August 31, 2013, stabbing at the hands of his roommate by filing Grievance Number 156365.

### B.  Grievance Number 156363

Plaintiff also filed Grievance Number 156363 on September 2, 2013.  (Doc. 15-4, p. 8.) Plaintiff stated he was stabbed on August 31, 2013, and that he advised the captain on more than one occasion that he and his roommate were having problems.  Plaintiff also stated the captain (Defendant McFarlane) ignored his concerns, which led to him getting stabbed five times.  (Id.) Plaintiff's grievance was denied on the merits.  (Id. at p. 3.)

Like the filing of Grievance Number 156365, Plaintiff did not properly exhaust his administrative remedies by the filing of Grievance Number 156363. Plaintiff only names Defendant McFarlane in this grievance, and there is nothing in this grievance which would have placed the remaining Defendants on notice Plaintiff intended to complain about them and their actions or inaction. Further, Plaintiff failed to file an appeal of the denial of this grievance. In sum, Plaintiff did not exhaust his administrative remedies as to his claim that Defendants were deliberately indifferent to his safety prior to the August 31, 2013, stabbing at the hands of his roommate by filing Grievance Number 156363.

**C.    Grievances Numbered 162060 and 162748**

Plaintiff filed Grievance Number 162060 on November 26, 2013, and complained about a lack of proper medical care for his "threatening conditions." (Doc. 15-4, p. 12.) Plaintiff also filed Grievance Number 162748 on December 5, 2013, and stated Officer McDaniel slammed his arm in the tray flap of his cell door. (<u>Id.</u> at p. 15.)

The filing of these two (2) grievances does not constitute proper exhaustion. Plaintiff does not set forth any information in these grievances revealing his assertion that Defendants were deliberately indifferent to his safety, nor does he name any of the Defendants from his Complaint in these grievances. Plaintiff's Grievances Number 162060 and 162748, which contain allegations of deliberate indifference to medical needs and excessive force, respectively, do not satisfy the exhaustion requirements of SOP IIB05-0001 concerning the facts underlying the instant cause of action.

In sum, Plaintiff failed to exhaust his administrative remedies concerning the allegations forming the basis of his cause of action prior to the filing of his Complaint in this Court. The Court notes Plaintiff's assertion that he verbally exhausted his administrative remedies as to each

Defendant, but, even accepting this assertion as true does not allow Plaintiff to overcome Defendants' Motion. Pursuant to Georgia Department of Corrections' policy and the applicable case law, Plaintiff was required to file a formal grievance and an appeal of any denial of that grievance before he filed his cause of action. Plaintiff failed to do so; therefore, he failed to exhaust his administrative remedies prior to the filing of this Complaint.

For these reasons, this portion of Defendants' Motion to Dismiss should be **GRANTED**, and Plaintiff's Complaint should be **DISMISSED**, without prejudice. As a result, it is unnecessary to address the remaining portions of Defendants' Motion.

## III.    Leave to Appeal *In Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[4]  Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. See Fed. R. App. R. 24(a)(1)(A) ("A party who was permitted to proceed *in forma pauperis* in the district-court action, . . ., may proceed on appeal *in forma pauperis* without further authorization, unless the district court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith[.]").  An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cnty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v.

---

[4]  A Certificate of Appealability ("COA") is not required to file an appeal in a Section 1983 action. See Fed. R. App. P. 3 & 4; Morefield v. Smith, No. 607CV010, 2007 WL 1893677, at *1 (S.D. Ga. July 2, 2007) (citing Mathis v. Smith, No. 05-13123-A (11th Cir. Aug. 29, 2005) (unpublished)).

Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendants' Motion to Dismiss, Plaintiff's potential *in forma pauperis* status on appeal should be **DENIED**, as there are no non-frivolous issues to raise on appeal, and any appeal would not be taken in good faith.

CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion to Dismiss, (doc. 15), be **GRANTED** and that Plaintiff be **DENIED** leave to appeal *in forma pauperis*.  Plaintiff's Complaint, (doc. 1), should be **DISMISSED**, without prejudice, based on his failure to exhaust his administrative remedies, and this case should be **CLOSED**.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not

meeting the specificity requirement set out above will not be considered by a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 9th day of July, 2015.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA